IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 13-cv-02197-WJM-MEH

BEN GUNN, and
JENNIFER GUNN,

    Plaintiffs,

v.

WILLIAM C. CARTER,

    Defendant,

WCA LOGISTICS, LLC, and
WCA LOGISTICS II, LLC,

    Defendants/Third-Party Plaintiffs,

v.

JOHN E. BREEN,

    Third-Party Defendant.

_____

**ORDER GRANTING IN PART THIRD-PARTY DEFENDANT'S
MOTION TO STRIKE EXPERT REPORTS**
_____

This matter is before the Court on Third-Party Defendant John E. Breen's ("Breen") Motion to Strike Expert Reports ("Motion"). (ECF No. 142.) For the reasons set forth below, the Motion is granted in part and denied in part.

### I. BACKGROUND

On December 5, 2013, Defendants WCA Logistics, LLC and WCA Logistics II, LLC (together "Defendants") filed a Third-Party Complaint against Breen alleging legal malpractice, among other claims. (ECF No. 19.) Defendants subsequently amended

their Third-Party Complaint against Breen to include counts of legal malpractice, negligence *per se*, breach of fiduciary duty, breach of the duty of loyalty, fraud, and civil conspiracy. (ECF No. 53 at 13-20.)

Defendants allege that, approximately ten years ago, Breen began representing WCA Logistics, LLC ("WCA") as legal counsel "on a regular basis" in litigation and transactional matters. (*Id*. ¶¶ 13-14.) Beginning in June 2012, Breen served as the exclusive legal counsel and Chief Operating Officer of WCA. (*Id*. ¶¶ 15-16.) On September 20, 2012, Breen incorporated WCA Logistics II, LLC ("WCA II") (*Id*. ¶ 51), and thereafter served as legal counsel to both WCA and WCA II (*Id*. ¶ 24).[1] In mid-2012, WCA and Breen became interested in buying a competing company and setting up a network of freight brokerages in several states. (*Id*. ¶ 26.) Breen accordingly contacted Plaintiffs Ben and Jennifer Gunn regarding their desire to sell Armada Logistics, Inc. ("Armada"). (*Id*. ¶ 30.) Defendants state that WCA II, through Breen, thereafter executed an "Asset Purchase Agreement" with Plaintiffs for the purchase of Armada without the knowledge or approval of WCA's management team. (*Id*. ¶¶ 52-54.) Defendants further allege that Breen failed to conduct sufficient due diligence on the Armada acquisition. (*Id*. ¶¶ 40-42.)

On February 14, 2013, Breen tendered his resignation as an employee of Defendants. (*Id*. ¶ 73.) Breen allegedly continued to communicate with Mr. Gunn regarding WCA, assisted Plaintiffs in finding a Colorado attorney to represent them in

---

[1] Defendants allege that "[u]ntil WCA and WCA II severed the attorney-client relationship in February 2013, Mr. Breen identified himself as COO for WCA, general counsel for WCA, president of WCA II, and owner of WCA II." (*Id*. at ¶ 23.)

this matter, communicated with Plaintiffs and their attorney about possible legal claims Plaintiffs could assert against Defendants, and drafted a complaint on Plaintiffs' behalf substantially similar to that filed in this matter. (*Id.* at ¶¶ 75-82.)

On February 23, 2015, Breen filed the instant Motion, which challenges the reports of Defendants' designated experts, Shan Scott and David Rickert. Defendants offer Mr. Scott and Mr. Rickert as experts regarding Breen's alleged misconduct during the Armada acquisition and his ethical lapses thereafter. (*See* ECF Nos. 142-1 & 142-2.)

## II.  LEGAL STANDARD

A district court must act as a "gatekeeper" in admitting or excluding expert testimony. *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2004). Admission of expert testimony is governed by Rule 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  The proponent of the expert testimony bears the burden of proving the foundational requirements of Rule 702 by a preponderance of the evidence. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc).

### III.  ANALYSIS

To determine the admissibility of an expert's opinion, the Court must undertake a two-step analysis.  *Id*.  "First, the court must determine whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion.  Second, the court must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology, as set forth in *Daubert*."  *Mathis v. Huff & Puff Trucking, Inc.*, 2015 WL 3462097, at *8 (10th Cir. June 2, 2015) (citations and internal quotation marks omitted).  Breen challenges the qualifications and reliability of Defendants' experts.  (ECF No. 142.)  The Court therefore address each portion of the analysis below.

### A.  Expert Report of Shan Scott

Breen argues that Mr. Scott is not qualified as an expert, and does not express reliable opinions.  (ECF No. 142 at 5-7.)  Breen's primary argument is that Mr. Scott is not an attorney and therefore cannot opine as to the standard of care for an attorney involved in the acquisition of a freight brokerage business.  (*Id*.)  However, the operative Third-Party Complaint in this matter contains several allegations against Breen, only some of which relate to his conduct as an attorney.  For example, the breach of fiduciary duty count states that "Mr. Breen, as attorney and COO for WCA, and as attorney and incorporator of WCA II, owed fiduciary duties to WCA and WCA II."  (ECF No. 53 at 16).  Mr. Scott's opinions must accordingly be evaluated in light of Breen's status as attorney *and* corporate officer of WCA and WCA II.

Mr. Scott opines that Breen did not conduct the necessary due diligence prior to acquiring Armada.  (ECF No. 142-1.)  Mr. Scott has 28 years of experience in the transportation logistics business and is currently the CEO of American Truck & Rail Audits, Inc.  (ECF No. 142-1 at 1-2.)  Mr. Scott describes himself as an "expert in all aspects of both the trucking and rail industries" who has "been instrumental in carrier negotiations and as a carrier liaison to some of the biggest truck and rail shippers in the country."  (*Id*. at 2.)  In the last 18 months, Mr. Scott has "signed two Non-Disclosure Agreements to consider the acquisition of transportation logistics businesses."  (*Id*.)

The Court finds that Mr. Scott is qualified to express the opinions contained in his report.  To qualify as an expert, the witness must possess such "knowledge, skill, experience, training, or education" in the particular field as to make it appear that his or her opinion would rest on substantial foundation and would aid the trier of fact in its search for the truth.  *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004).  Mr. Scott possesses an extensive background in the shipping industry and has been personally involved in evaluating the acquisition of transportation logistics businesses.  While Breen argues that Mr. Scott's background in transportation logistics has little relevance to "freight brokering," Breen does not meaningfully distinguish the two.  (ECF No. 171 at 4.)  Mr. Scott is thus qualified by his knowledge and experience to express an expert opinion on the adequacy of Breen's due diligence during the Armada purchase, but will not be permitted to testify as to whether Breen violated his duties as an attorney with regard to the same.

The Court also finds that Mr. Scott's opinion is reliable.  Mr. Scott's report states that, in forming his opinion, he reviewed "the same documents that Breen had available

5

to him when he considered the acquisition of Armada." (ECF No. 142-1 at 3.) These documents, Mr. Scott writes, did not allow Breen to make an informed decision regarding the Armada purchase, and what information was available should have been verified and thoroughly investigated. (*Id*. at 3-7.) In cases such as this, "the relevant reliability concerns may focus upon personal knowledge or experience," rather than on the *Daubert* factors and scientific foundations. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 150 (1999); *see also Bitler*, 400 F.3d at 1235. Mr. Scott's opinion is therefore reliable because he considered the same materials Breen had on hand prior to purchasing Armada, described, based on his years of relevant experience, how Breen's due diligence was deficient, and how the process should have been conducted.

Breen's arguments that Mr. Scott failed to describe the relevant standard of care and his methodology are unavailing. (ECF No. 142 at 6.) A district court has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire*, 526 U.S. at 152. Mr. Scott's methodology is evidently derived from his experience as a CEO of a transportation logistics business, and his consideration of "several potential acquisitions" of such businesses. (ECF No. 142-1 at 2.) Mr. Scott's opinions will also be helpful to the jury in fully understanding the relevant transaction, which itself may be evidence of Breen's alleged breach of his fiduciary duties. The Court accordingly declines to strike Mr. Scott's report based on these arguments.

B.  **Expert Report of David Rickert**

With regard to Mr. Rickert's qualifications, Breen argues that Mr. Rickert's general

6

experience as a litigator does not render him an expert in legal ethics. (ECF No. 142 at 7-8.) Mr. Rickert's practice "consists of entirely litigation-related matters in various contexts." (ECF No. 142-2 at 2.) However, he served on the grievance committee in Greene County, Ohio, "for a short time," prosecuted attorney grievances for the Dayton Bar Association, and "on one occasion defended an attorney in a disciplinary matter." (*Id*. at 2.)

Breen raises a colorable challenge to Mr. Rickert's qualifications as a legal ethics expert. Even so, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993); *see also Lovato v. Burlington N. & Santa Fe Ry. Co.*, 2002 WL 1424599, at *4 (D. Colo. June 24, 2002) ("Whatever shortcomings [the defendant] may perceive in [plaintiff's expert's] academic or professional background are more properly addressed in cross-examination. [The defendant's] challenge to [his] qualifications go to the weight of the witness's testimony, and not to its admissibility."). Therefore, in light of Mr. Rickert's background as an attorney with some relevant ethics experience, and that "the rejection of expert testimony is the exception rather than the rule," the Court declines to strike Mr. Rickert's report on the basis of his qualifications. Fed. R. Evid. 702 Advisory Committee's note.

Whether Mr. Rickert's opinion is reliable presents a closer question. Mr. Rickert's initial and supplemental reports detail Breen's alleged violation of the Ohio Rules of

Professional Conduct, specifically Rule 1.9 titled "Duties to Former Clients."[2] (ECF Nos. 142-2 & 161-1.) Yet "[v]iolations of the rules of the Code of Professional Responsibility . . . do not constitute malpractice *per se*." *Montgomery v. Gooding, Huffman, Kelly & Becker*, 163 F. Supp. 2d 831, 836 (N.D. Ohio 2001) (citing *Nw. Life Ins. Co. v. Rogers*, 573 N.E.2d 159 (Ohio App. 1989)). Application of the Rules is primarily limited to non-judicial disciplinary proceedings:

> Violation of a rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached. . . . The rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the rules can be subverted when they are invoked by opposing parties as procedural weapons. . . . Nevertheless, since the rules do establish standards of conduct by lawyers, a lawyer's violation of a rule may be evidence of breach of the applicable standard of conduct.

Ohio Rules of Prof. Conduct Preamble: A Lawyer's Responsibilities. Moreover, "alleged violations of the Code of Professional Responsibility do not relieve [Defendants] of [their] obligation to provide expert testimony as to the breach of standard of care." *Montgomery*, 163 F. Supp. 2d at 836. Mr. Rickert may not, therefore, use the Rules as a substitute for the standard of conduct, which must be separately established.

Mr. Rickert's report vaguely states that Breen's conduct "fell below the required standard of care with regard to his duties owed to WCA Logistics" but fails to elaborate what that standard is, and how Breen's conduct fell outside of its parameters. (ECF No.

---

[2] The allegations against Breen relate, in part, to his conduct as an Ohio attorney, and the parties cite Ohio law as the governing authority on this issue.

142-2 at 3.) Mr. Rickert's comment that "expert testimony can be presented at trial to supplement the analysis of Mr. Breen's conduct under the Rule of Professional Conduct to establish his breach of such standard of care" does not cure the deficiencies his reports present. (ECF No. 161-1 at 5.) Rule 26(a)(2) requires "a complete statement of *all* opinions to be expressed and the basis and reasons for them." (emphasis added). "Expert disclosures must be 'detailed and complete,' and not 'sketchy and vague.'" *Scholl v. Pateder*, 2011 WL 3684779, at *2 (D. Colo. Aug. 22, 2011) (citing Advisory Committee's Note to Fed. R. Civ. P. 26). Therefore, because Mr. Rickert only describes Breen's breach of the Rules of Professional Responsibility, without also setting forth the applicable standard of care, the Court finds that his reports should be stricken.[3] The Court will, however, provide Mr. Rickert leave to amend his report to more fully articulate and discuss the standard of care.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Third-Party Defendant John E. Breen's Motion to Strike Expert Reports (ECF No. 142) is GRANTED IN PART and DENIED IN PART;

2. The expert reports of David Rickert are STRICKEN. However, Defendants shall be permitted until July 17, 2015 to serve a revised report prepared by Mr. Rickert that sets forth more fully the applicable standard of care as described in this

---

[3] Breen's other arguments in support of his Motion relate to the correctness, rather than the reliability, of Mr. Rickert's opinions. (*See generally* ECF No 142.) It is not the Court's function to question the credibility or weight of an expert's opinion; this duty, rather, rests solely with the trier of fact. *Hertz v. Luzenac America, Inc.*, 2011 WL 1480523, *4 (D. Colo. April 19, 2011).

      Order.  Any revised report prepared by Mr. Rickert must comply with Federal Rule of Civil Procedure 26(a)(2);

3. Upon receipt of Mr. Rickert's amended report, Third-Party Defendant John E. Breen may serve a rebuttal expert report within 21 days thereafter, but no later than August 7, 2015 in any event; and

4. Mr. Rickert and Mr. Breen's expert, if any, may be further deposed based on the information contained in the amended and rebuttal expert reports on or before August 31, 2015.  This Order does not alter any other deadlines in this matter.

Dated this 17th day of June, 2015.

BY THE COURT:

_____
William J. Martínez
United States District Judge